The opinion of the Court was delivered by,
Sergeant, J.
The legal principles in relation to sea-worthiness of vessels insured, are clearly and succinctly stated in the opinion of the (now) President of the District Court, brought up with this record. The plaintiff insists, that the doctrine on the subject is not applicable to the present case. He admits the law to be, as laid down in the authorities, that if a vessel sails on her voyage, and in a day or two, becomes leaky, and founders, or is obliged to return to port, without any storm, or visible or adequate cause to produce such an effect, the presumption is, that she was not sea-worthy when she sailed. Munro v. Vandum, (Park’s Ins. 224.) Talcott v. Marine Ins. Co. (2 Johns. Rep. 124.) But he contehds, that if she perform the voyage, and arrive at her port of destination, she is to be deemed sea-worthy, as between the insurer and the insured on the vessel, whether such leakiness has occurred or not. This would subvert the rule as to sea-worthiness altogether, and make it depend not on the state and condition of the vessel at the time she sails, but on the event. It would substitute an unfair and dangerous test, in lieu of the wise and salutary requisitions imposed by the Jaw; for the best provided vessel may meet with misfortune, and founder at sea, or be compelled to return to port. On the other hand, a weak and insufficient ship may attempt the voyage, to the imminent danger of the lives and property on board, and yet escape destruction almost by a miracle. It is not by events, that human affairs are to be judged. Experience teaches us, that in a vast majority of these cases, unless •due precautions are taken, disaster will ensue: and therefore the law requires it of the insured, as a condition precedent to the attaching of the contract of insurance, that the vessel at her departure from port be tight, staunch, and strong, well fitted, manned, and provided with all necessary requisites, to meet the perils of the ocean, which she is to encounter in her voyage. And the inquiry is not, after the voyage is ended, has she escaped notwithstanding a gross neglect of all that prudence dictated for her preservation; but was she equipped and fitted out as she ought to have been. If she was not, she was not sea-worthy, — not worthy or fit to go to sea: not in a con *407 dition to meet and resist its perils. A contrary doctrine would tend to throw on the insurer the expense of repairs, which the insured himself ought to have disbursed before the vessel sailed. Besides, a vessel tight, staunch, and strong, and in good sailing condition, will pass, without harm, through assaults which would materially damage a leaky and infirm ship. The latter is not only less able to resist the shocks of the winds and waves, but the crew are exhausted by the necessity of pumping, and, therefore, incapable of performing their duty, when great exertions become necessary. She is not, therefore, so well manned as she otherwise would be. Nor is it wise or safe to tempt owners and shippers to run into danger, when unprovided to meet i't. The disasters of mariners, not unfrequently of the most dreadful and appalling character, ought not to be multiplied, by stimulating them into unnecessary experiments, how far they dare venture in a leaky vessel. The law casts her mantle of-protection over them, as well as the interests of the shipper, by declaring that no insurance on the vessel is valid, if she is put to sea in an unseaworthy state; and it is of importance to the great interests embarked in commerce, as well as to the preservation of life, that the requisitions of the law in this respect should not be relaxed. The owner should be obliged to perform his duty, and be induced to attend to that, which he alone can attend to, the state and condition of his vessel, and to place her, under the guaranty of the policy, in a condition fitted to meet those perils of the sea, which the insurer takes upon himself.- If he does not, he, throws on the insurer other perils not within the contract: perils which do not the less exist, because, by good fortune, they may happen not to prove fatal: and which may, of themselves, produce an average loss, without foundering the ship or defeating the-voyage. If the owner does not choose to do this, or even if it occur without his knowledge or default, (and the same rule applies to policies on goods,) there is no contract: the consideration fails, and the risk remains with the party himself. We are, therefore, of opinion, that the doctrine is applicable, notwithstanding the vessel reaches her port of destination; if it sufficiently appear by .the -evidence, that the vessel sailed in a leaky state,, and in want of repairs. And this is the point of view in which the Court below put the case to the jury.
2. Nor is there any foundation for the complaint., that the Court took the facts from the jury, or assumed more than they ought legally to have done in charging them. The Court applied the rule of law to the facts as they appeared, at the same time instructing the jury, that if there were contradictory facts, they might consider them, and the result would be different. There were, however, no contradictory facts shown, and the Court would have erred to leave it to the jury to presume facts, without any evidence, from which such presumption could legally be drawn. “ To submit a fact destitute of evidence,” says C. J. Gibson, in Stouffer v. Lalshaw, (2 Watts, 167,) “ as *408 one that may nevertheless be found, is an encouragement to err, which cannot be too closely observed, or unsparingly corrected.” To the same effect, is the opinion of the Court delivered by Mr.Justice Rogers in Star v. Bradford, (2 Penn. Rep. 398.) Here the evidence was clear, that from her departure, this vessel, with constant light-breezes, leaked; that the leak continued increasing for nine days, so that the hands were obliged to pump, at first, every hour, then every half hour, and then every fifteen minutes : after-wards a s'torm commenced, and the vessel laboured much, and shipped great quantities of water, till they had to pump every five minutes, and she continued very leaky, damaging the cargo, until her arrival. No evidence was given by the insurer to account for this state of the ship: there was no violence of wind or wave till the 9th day; there was not time for the ordinary working and straining of the timbers to produce a leak : and the inevitable presumption is, that she had an inherent defect at the time of sailing. This is the legal presumption, and so stated in the authorities, and elementary writers, and the Court, in laying down the law to the jury, could, do no otherwise than state that- legal presumption on, the facts existing. Upon the whole, the charge of the Court is, in the opinion of this Court, correct, and the judgment must be affirmed.
Judgment affirmed.